Dennis W. GONZALEZ, Plaintiff,

v.

Jon E. LITSCHER, Gerald Berge, Todd T. Overbo, Bradley T. Hompe, Peter A. Huibregtse, John Ray and Cindy O'Donnell, Defendants.

No. 01–C–521–C.

United States District Court, W.D. Wisconsin.

Sept. 20, 2002.

Dennis Gonzalez, pro se.

Jody J. Schmelzer, Assistant Attorney General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for injunctive, declaratory and monetary relief, brought pursuant to 42 U.S.C. § 1983. Plaintiff Dennis W. Gonzalez, a prisoner presently confined at the Supermax Correctional Institution in Boscobel, Wisconsin, contends that defendants violated his First Amendment right to freely exercise his religion and his Fourteenth Amendment right to equal protection. Specifically, plaintiff maintains that defendants are preventing

him from practicing the religion of his Native American ancestors by preventing him from using items he needs to adhere to his religious beliefs such as a sweat lodge, medicine bag, ceremonial drums, feathers and smoking pipes; that certain defendants removed a religious book from his cell; and that defendants restricted his religious practice but did not similarly restrict the religious practice of prisoners of different faiths.

Presently before the court is defendants' motion for summary judgment. Because I find that plaintiff failed to exhaust his administrative remedies with respect to his claim that defendants removed a religious book from his cell, defendants will be granted summary judgment on that claim. Because no reasonable jury could find that defendants violated plaintiff's First Amendment rights by denying him access to a sweat lodge, defendants will be granted summary judgment on that claim as well. I conclude that the class action consent decree relied on by defendants does not bar plaintiff from pursuing his claims that he was denied access to a medicine bag, ceremonial drums, feathers and a smoking pipe in violation of the First Amendment's free exercise clause. Defendants' motion for summary judgment will be denied as to these claims. However, defendants are qualifiedly immune to plaintiff's demand for money damages on these claims. Finally, because plaintiff has set forth no facts from which a jury could conclude that defendants singled out Supermax inmates who practice the Native American religion for adverse treatment in comparison to inmates who practice other religions, defendants will be granted summary judgment on plaintiff's Fourteenth Amendment equal protection claim.

For the purpose of deciding the pending motion, I find from the parties' proposed findings of fact that the following material facts are undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Dennis Gonzalez is an inmate at the Supermax Correctional Institution who is currently classified as a level one inmate within the prison's level program process. (I note from other cases tried in this court that level one is the highest security classification at Supermax). Defendant Jon E. Litscher is Secretary of the Department of Corrections. Defendant Gerald Berge is the warden at Supermax. Defendant Brad Hompe is the corrections unit supervisor of Alpha Unit at Supermax and is responsible for the security, treatment and general living conditions of all inmates assigned to the unit. Defendant Todd T. Overbo is a chaplain at Supermax, whose duties include coordinating all pastoral visits, making weekly cell-front rounds to talk to inmates, filling inmate requests for religious library loans, responding to inmate interview requests, scheduling religious programming on the Supermax closed circuit television network and processing inmate requests for religious materials from outside the prison. Defendant John Ray is a corrections complaint examiner. He has access to and is a custodian of records for inmate appeals within the inmate complaint review system. Defendant Peter A. Huibregtse reviews inmate complaints. Neither party has specifically identified defendant Cindy O'Donnell's position, although defendants' proposed facts make clear that she has the authority to act as defendant Litscher's designee in deciding appeals within the inmate complaint review system.

### B. *Facts Relevant to First and Fourteenth Amendment Claims*

In order to participate in religious ceremonies and practices, Supermax inmates must submit a religious preference form. Plaintiff Gonzalez has filed a religious pref-

erence form identifying himself as an adherent of the Native American religion. Native American inmates on all security levels at Supermax are allowed to pray in their cells, to correspond with Native American religious leaders, to telephone those leaders whose names appear on the inmate's approved visitor list and to obtain visits from Native American religious leaders by submitting a request for a pastoral visit.

Inmate access to religious personal property items is determined by religious necessity and the security policies and procedures of the institution. What constitutes a religious necessity is determined on the basis of each inmate's indication of their religious preference on the designated form and consultation with outside religious leaders. All inmates at Supermax on level one are allowed one religious book, regardless of their religion. Although other religions have a set religious text, such as the Bible or Koran, there is no specific religious book for Native Americans. Native American inmates on all security levels at Supermax are allowed to possess one approved religious text at a time in their cell and one braid of sweet grass to facilitate their prayer. These items may be obtained from approved vendors. Religious books concerning Native American beliefs and practices can also be obtained on loan from the Supermax religious material library. Although inmates on level one may borrow only one religious text and one self-help book, inmates on higher levels may borrow more religious books at one time from the prison's collection. According to a list compiled by defendant Overbo, 56 Native American texts are available through the prison library. At security level two and above, Supermax inmates have access up to three times a week to 20 video and 5 audio tapes concerning Native American religious practices and beliefs that they can watch on televisions in their cell provided by the Department of Corrections.

Plaintiff is currently on level one. Therefore, he is allowed one personal soft cover book and one braid of sweet grass. Plaintiff may also pray in his cell and correspond and visit with Native American religious leaders approved by the institution. Supermax inmates may not possess medicine bags, feathers, smoking pipes and ceremonial drums or participate in sweat lodge activities.

At Supermax, the only difference between the Native American religion and other religions is the kind of personal property that adherents of the various religions are allowed to possess, depending on their religious preference designation. Defendant Overbo never treated plaintiff differently from other Native American inmates at Supermax. Defendant Hompe never treated plaintiff any differently from other inmates at Supermax, regardless of their religious affiliation.

Plaintiff is a member of the class in *Jones 'El v. Litscher*, No. 00–C–421–C, (W.D.Wis.2002), a case filed in this court in which plaintiff, along with other class members, was represented by counsel. In February 2001, I certified a class in *Jones 'El* defined as "all persons who are now, or will in the future be, confined in the Supermax Correctional Institution in Boscobel, Wisconsin." *Id.*, dkt. # 37, slip op. at 13 (order dated February 15, 2001). In that order, I allowed the plaintiff class to proceed on claims that the physical conditions of confinement at Supermax amount to cruel and unusual punishment in violation of the Eighth Amendment and that Supermax prisoners are subjected to certain searches in violation of the Fourth Amendment. Later, after the plaintiffs filed an amended complaint, I certified for class treatment additional claims involving the adequacy of medical, dental and mental

health care available to Supermax inmates and the use of stun guns and stun shields at the prison. However, I refused to certify a class for the purpose of litigating the plaintiffs' First Amendment claim that Supermax prisoners are denied various religious items, because I found that the plaintiffs had failed to demonstrate that this claim was suitable for class treatment. *Id.,* dkt. # 90, slip op. at 31 (order dated August 14, 2001).

On March 8, 2002, this court approved a consent decree settlement reached by the parties in *Jones 'El.* Article XIII, § 13.9.5 of the settlement agreement states that Native American Supermax inmates shall normally be permitted to possess "one braid of sweet grass (app. 2 inches long)—religious text on all levels—other books/literature depending on level." (Separate provisions of the agreement deal with access to religious articles by Protestant, Muslim, Jewish, Catholic, Buddhist and Wiccan inmates.) The court noted also that "nothing contained within [the agreement] either initiates or authorizes the continuation of clearly illegal conduct."

According to prison records, a Native American text was removed from plaintiff's cell during a cell search on September 29, 2000, when he was on security level one. This occurred because prison staff did not identify the book as a religious text. Plaintiff contacted defendant Overbo after the book was confiscated and asked him to approve it as a religious text. Defendant Overbo approved plaintiff's request and gave the book back to him the next working day. Defendant Hompe has no recollection of receiving any correspondence from plaintiff regarding the removal of the book from his cell. If defendant Hompe had received correspondence from plaintiff he would have responded to him either in writing or in person. Supermax inmates are informed in their inmate handbooks that they should contact the prison chaplain for direction and approval if they are unsure whether a book or publication is considered appropriate.

### C. *Facts Relevant to Administrative Exhaustion*

Plaintiff filed inmate complaint number SMCI–2000–26823, in which he complained that he was not allowed to participate in sweat lodge, smudging or drum and pipe ceremonies or possess Native American religious items such as feathers, sage, cedar, tobacco, kinnickwick, a medicine bag, sacred pipe, medicine wheel or a headband. Defendant Huibregtse dismissed complaint number SMCI–2000–26823 on October 26, 2000. Plaintiff did not appeal the dismissal to the corrections complaint examiner.

Plaintiff filed inmate complaint number SMCI–2000–28596, in which he complained again about not being able to possess certain Native American religious items or attend Native American religious ceremonies. Defendant Huibregtse dismissed the complaint on November 9, 2000. On December 28, 2000, the dismissal was affirmed on appeal by defendant Litscher's designee, defendant O'Donnell.

Plaintiff filed inmate complaint number SMCI–2000–27962, in which he complained about the September 29, 2000 cell search in which prison officers removed a Native American religious text from his cell. This complaint was dismissed on November 3, 2000. Plaintiff did not appeal the dismissal to the corrections complaint examiner.

### OPINION

Plaintiff was granted leave to proceed on three claims. First, plaintiff alleges that a religious book was removed from his cell by corrections officers and that defendant Hompe did not respond adequately when plaintiff objected to the removal, thereby violating plaintiff's First

Amendment right to freely exercise his religion. Second, plaintiff contends that defendants are violating his free exercise rights by denying him access to a sweat lodge, medicine bag, ceremonial drums, feathers and smoking pipes, all of which plaintiff needs to practice his religion. Finally, plaintiff maintains that defendants violated his Fourteenth Amendment right to equal protection by placing restrictions on the practice of his religion while declining to similarly restrict prisoners who hold other religious beliefs.

### A. Removal of Religious Book from Plaintiff's Cell

Defendants argue that they are entitled to summary judgment on plaintiff's claim regarding the removal of a religious book from his cell because he failed to exhaust his administrative remedies as to that claim. I agree. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The term "prison conditions" is defined in 18 U.S.C. § 3626(g)(2) as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." The Court of Appeals for the Seventh Circuit has held that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir.1999); *see also Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999).

Wis. Admin. Code § DOC 310.04 requires that before commencing a civil action, an inmate "shall file a complaint under s. DOC 310.09 or 310.10, receive a decision on the complaint under s. DOC 310.12, have an adverse decision reviewed under s. DOC 310.13, and be advised of the secretary's decision under s. DOC 310.14." The regulations require an inmate wishing to file a complaint to do so within 14 calendar days after the occurrence giving rise to the complaint, but allow the inmate complaint investigator to accept a late complaint for good cause. Wis. Admin. Code § DOC 310.09(3). According to § DOC 310.11(11), the inmate's complaint is to be examined by the inmate complaint investigator, who investigates the complaint and recommends a decision to the appropriate reviewing authority. Within five working days after receipt of the inmate complaint investigator's report, the appropriate reviewing authority (defined in § DOC 310.03(3) as "the warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint") is to issue a written decision. Wis. Admin. Code § DOC 310.12(1). If, however, the complainant does not receive the reviewing authority's decision within 23 working days of the receipt of the complaint by the inmate complaint investigator, § DOC 310.12(3) provides that the complaint is considered denied and can be appealed immediately. An inmate has ten calendar days after the date of the decision to file a written request for review with the corrections complaint examiner and the corrections complaint examiner has discretion to accept a late appeal under certain circumstances "if the elapsed time has not made it difficult or impossible to investigate the complaint." Wis. Admin. Code § DOC 310.13(1), (3). The corrections complaint examiner makes a written recommendation that is forwarded to the secretary, who determines within ten days

of receiving the recommendation whether to accept the recommendation, adopt the recommendation with modifications, reject the recommendation or return the recommendation to the corrections complaint examiner for further investigation. Wis. Admin.Code § DOC 310.13(7), 310.14.

Plaintiff filed inmate complaint number SMCI–2000–27962 regarding the removal of his Native American religious text from his cell. However, the undisputed facts show that when the complaint was dismissed, plaintiff failed to appeal the dismissal to the corrections complaint examiner. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). The Wisconsin administrative code makes an appeal of a dismissed complaint to the corrections complaint examiner a requirement of the exhaustion process. Wis. Admin. Code § DOC 310.04, 310.13. When plaintiff failed to appeal the dismissal of his inmate complaint, he failed to exhaust his administrative remedies on this claim. *Id.* (exhaustion not accomplished because plaintiff failed to file timely appeal). Plaintiff contends only that Wisconsin's inmate complaint review system is illegal because it has not been certified by the United States Attorney General as meeting certain minimum standards, an argument that is legally frivolous and need not be discussed further. Accordingly, defendants will be granted summary judgment on plaintiff's claim that his free exercise rights were violated when a religious text was removed from his cell.

### B. *Denial of Access to Native American Religious Items and Ceremonies*

Defendants acknowledge that plaintiff properly exhausted his administrative remedies regarding his claim that defendants are violating his rights under the free exercise clause by denying him access to a sweat lodge, medicine bag, ceremonial drums, feathers and smoking pipes, all of which plaintiff needs to practice his religion. They argue, however, that plaintiff is barred from asserting this claim by the doctrines of claim preclusion, issue preclusion and judicial estoppel, because of his participation as a class member in *Jones 'El v. Berge,* No. 00–C–421–C. Defendants' claim preclusion, issue preclusion and judicial estoppel arguments hinge on section 13.9.5 of the *Jones 'El* settlement agreement, which specifies the religious items Native American inmates can have in their cells.

### 1. *Claim preclusion*

■ Defendants argue that the doctrine of claim preclusion, or res judicata, precludes plaintiff from litigating his First Amendment claim in this case by virtue of the religious articles provision of the settlement reached in *Jones 'El.* Claim preclusion "is an affirmative defense designed to prevent the 'relitigation of claims that were or could have been asserted in an earlier proceeding.'" *Rizzo v. Sheahan,* 266 F.3d 705, 714 (7th Cir.2001) (citation omitted). According to defendants, claim preclusion must apply because any other conclusion would render the settlement agreement's religious articles provision a nullity, robbing defendants of the benefit of the bargain they struck in agreeing to settle the *Jones 'El* suit. "A consent decree is res judicata and thus bars either party from reopening the dispute by filing a fresh lawsuit. Alternatively, it is a contract in which the parties deal away their right to litigate over the subject matter." *United States v. Fisher,* 864 F.2d 434, 439 (7th Cir.1988) (internal citations omitted); *see also* 18 *Moore's Federal Practice,* § 131.30[3][c][ii] (Matthew Bender 3d ed.) (consent judgments "have the claim preclusive effect of any other final judgment on the merits."); 18A Charles Alan Wright et

al., *Federal Practice and Procedure* § 4443, at 265 (2d ed. 2002) ("[C]onsent judgments ordinarily support claim preclusion but not issue preclusion."). At first blush the consent decree in *Jones 'El* appears to have preclusive effect, entitling defendants to estop plaintiff from suing for access to more religious articles than those allotted to Native American Supermax inmates by the *Jones 'El* settlement agreement, an agreement to which plaintiff was a party by virtue of his membership in the plaintiff class.

However, the preclusive effect of the religious articles provision in the *Jones 'El* consent decree is complicated by the fact that the case was brought as a class action.

> Because of the need to later determine the res judicata effect of class actions, and to whom res judicata will apply, it is important for the courts to 'adhere clearly and explicitly to Rule 23's procedural framework.' A failure to properly certify an action as a class action and formally identify the class under the procedures set forth in Rule 23, renders the action not properly a class action, and results in only the named parties being bound by the judgment.

5 *Moore's Federal Practice,* § 23.61[2][a]. The class in *Jones 'El* was defined to include "all persons who are now, or will in the future be, confined in the Supermax Correctional Institution in Boscobel, Wisconsin." With respect to this class, four issues were certified for class treatment, none of which was the proposed First Amendment claim regarding the prison's policy relating to religious articles. Indeed, on two separate occasions this court refused specifically to certify the plaintiffs' religion claim because it could not satisfy the requirements of Fed.R.Civ.P. 23. In the court's order dated February 15, 2001, I concluded that the plaintiffs' religious articles claim could not satisfy the commonality and typicality requirements of

Rule 23. After the *Jones 'El* plaintiffs amended their complaint to allege the existence of systemic restrictions on religious articles at Supermax, I again refused to certify this claim under Rule 23 because it would require "too much individualized analysis" to be certified as a class action. *Jones 'El,* dkt. # 90, slip op. at 31 (order dated August 14, 2001). This raises the question whether a provision in a class action settlement agreement has preclusive effect with respect to the claims of absent, or unnamed, class members, even if the subject of the provision was deemed inappropriate for class treatment. Specifically, I must determine whether plaintiff and all other present and future Supermax inmates are precluded by the *Jones 'El* settlement agreement from asserting First Amendment claims seeking access to religious items other than those identified in the agreement, even though this court concluded that such a First Amendment claim was not appropriate for class treatment under Rule 23.

Some commentators have noted that as long as "it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented." Wright et al., *Federal Practice and Procedure* § 4443, at 269–70. For instance, in *4901 Corp. v. Town of Cicero,* 220 F.3d 522 (7th Cir.2000), the Court of Appeals for the Seventh Circuit considered a challenge brought by several bars to a town's adult use ordinance. In an earlier suit, the bars had challenged the town's repeal of a different ordinance that authorized late night liquor licenses. In settling the earlier suit, the parties had agreed that the bars would comply with the adult use ordinance. The court of appeals determined that the settlement agreement in the earlier case had a res judicata effect, precluding the bars from bringing a subsequent constitutional chal-

lenge to the adult use ordinance, even though the earlier state court case had not involved that particular ordinance or considered its constitutionality. According to the court of appeals, "[t]he Bars broadened [the earlier state court] action—at least for res judicata purposes—by agreeing to a settlement of that case which included their obligation to comply with the Adult Use Ordinance." *Id.* at 530. This conclusion is consistent with the view that the "basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." Wright et al., *Federal Practice and Procedure* § 4443, at 262.

In the context of a class action, however, determining the scope of a judgment's preclusive effect can be more difficult. Defendants maintain that res judicata bars plaintiff's First Amendment religious articles claim because he was a member of the class in *Jones 'El* and the settlement agreement in that case addresses inmate access to religious articles. However, as I have already noted, in *Jones 'El,* I refused to certify a First Amendment religious articles claim because such a claim necessarily required too much individualized analysis to be suitable for class treatment. In class-based litigation, "[p]reclusion is appropriate ... only if the class action provides a suitable substitute for individual litigation." *Id.* at § 4454, at 448. In refusing to certify a First Amendment religious articles claim in *Jones 'El,* I necessarily concluded that class treatment of such a claim was *not* a suitable substitute for individual litigation. This makes it difficult to square defendants' argument that the settlement agreement in *Jones 'El* should bind class members with my refusal in that case to certify a First Amendment claim. Moreover, the general rule is that "[i]n a settlement entered without class certification the judgment will not have a res judicata effect on the claims of absent class members." *Simer v. Rios,* 661 F.2d 655, 664 (7th Cir.1981); *see also* Wright et al., *Federal Practice and Procedure* § 4455, at 465–66 ("[I]ndividual actions remain available to pursue any ... questions that were expressly excluded from the class action."). Although a class was certified in *Jones 'El,* the certification did not extend to the question whether prison policies regarding access to religious articles violated the First Amendment rights of Supermax inmates.

In addition, I am not convinced that plaintiff was adequately represented in *Jones 'El* with regard to his First Amendment claims. In class actions, "[t]he most important requirement of preclusion is that the named parties afford adequate representation." Wright et al., *Federal Practice and Procedure* § 4455, at 448. In *Jones 'El,* I concluded that the plaintiffs' First Amendment claim could not satisfy Rule 23's typicality requirement. Typicality and adequacy of representation are generally considered two sides of the same coin. A named plaintiff whose claim is not typical of those of other unnamed class members is unlikely to be an adequate class representative. *Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1157 (7th Cir.1999). I never concluded that any named plaintiff in *Jones 'El* could adequately represent Native American Supermax inmates on a First Amendment claim seeking access to religious articles. Although the *Jones 'El* class was more than ably represented by counsel, it is not clear that class counsel sought vigorously to protect the free exercise rights of Supermax inmates given my refusal to certify a class action on the plaintiffs' proposed First Amendment claim. Because plaintiff Gonzalez did not benefit from adequate representation on his First Amendment religious articles claim in *Jones 'El,* the provision relating to such articles in the *Jones 'El* consent judgment has no preclu-

sive effect. *See, e.g., Frank v. United Airlines, Inc.,* 216 F.3d 845, 852–53 (9th Cir.2000); 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4455, at 471 ("Adequate representation is required to support preclusion by judgment in a class action.").

I am sympathetic to defendants' dilemma. With the *Jones 'El* consent judgment, defendants sought to enter into a more or less global agreement establishing acceptable conditions at the Supermax prison. If some provisions in the settlement agreement are not given full preclusive effect, the settlement becomes less global and defendants will be subjected to more inmate lawsuits. Nevertheless, "[r]epresentative class members, class counsel, the court, *and a class adversary who wishes the security of preclusion,* are responsible for ensuring actually adequate representation." Wright et al., *Federal Practice and Procedure* § 4455, at 485 (emphasis added). Defendants have presented no evidence suggesting that the First Amendment free exercise rights of Native American Supermax inmates were adequately represented in *Jones 'El.* Accordingly, I cannot conclude that the religious articles provision in the *Jones 'El* settlement agreement has preclusive effect.

Defendants make much of the fact that although plaintiff filed objections to several provisions of the *Jones 'El* agreement, he did not object to the agreement's religion provisions. However, "[a]ctual notice, the opportunity to opt out (when it is afforded), the opportunity to appear and participate, and the opportunity to object to settlement, are opportunities. They are not obligations" that, when not exercised, obviate the need for adequate representation. *Id.* Moreover, it is unclear whether a reasonable person in plaintiff's position would have recognized the possibility that a failure to object to the *Jones 'El* agreement's religion provisions would prevent him from continuing with this lawsuit, which had been filed before the settlement agreement in *Jones 'El* was reached and the notice of proposed settlement was sent to class members. The notice informed plaintiff and other class members that the "proposed settlement agreement, if approved by the Court, will be a final decision *on the issues raised in the lawsuit* and, because the case is a class action, will be binding upon all class members." Because I refused to certify a class with respect to the constitutional propriety of the prison's religious articles policy, it is far from clear that the policy constituted an "issue raised in the [*Jones 'El*] lawsuit."

For the foregoing reasons, I conclude that claim preclusion does not bar plaintiff from litigating his First Amendment religious articles claim in this case. For the same reasons, I find that defendants' issue preclusion and judicial estoppel arguments fail as well. I note also that even had I reached the opposite conclusion regarding the preclusive effect of the *Jones 'El* settlement agreement, plaintiff would nonetheless be allowed to proceed on a claim for money damages for the alleged violation of his First Amendment rights during the period of time before the settlement agreement was reached. The claims in *Jones 'El* were certified under Fed. R.Civ.P. 23(b)(2), which provides for declaratory and injunctive relief only. Where "a prisoner seeks damages for allegedly unconstitutional conditions of confinement he is not precluded by an earlier class action in which only declaratory and injunctive relief were sought." *Crowder v. Lash,* 687 F.2d 996, 1008–09 (7th Cir.1982). Indeed, I noted this fact in granting the *Jones 'El* parties' motion for approval of the settlement agreement. *Jones 'El,* dkt. # 207, slip op. at 6 (order dated March 8,

2002) ("The class members remain free to file individual suits for money damages for injuries they believe they have suffered during their incarceration at Supermax."). However, even though I have determined that plaintiff is not precluded from raising a First Amendment claim in this suit, I must decide whether defendants are entitled to summary judgment on plaintiff's religious articles claim on some ground other than preclusion.

### 2. Plaintiff's claim for injunctive and declaratory relief

■ In *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the Supreme Court enunciated the proper standards to be applied in considering prisoners' free exercise claims. The Court held that prison restrictions that infringe on an inmate's exercise of his religion will be upheld if they are reasonably related to a legitimate penological interest. *Id.* at 349, 107 S.Ct. 2400. The Court of Appeals for the Seventh Circuit has identified several factors that can be used in applying the "reasonableness" standard:

1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;

2. whether there are alternative means of exercising the right in question that remain available to prisoners;

3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and

4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

*Al–Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991) (quoting *Williams v. Lane*,

851 F.2d 867, 877 (7th Cir.1988)) (additional quotation marks omitted).

■ With the exception of arguing that they are qualifiedly immune from money damage claims, defendants put all their eggs in one basket in relying on the preclusion doctrines to bar plaintiff's First Amendment religious articles claim. Defendants have proposed no facts on this issue. They do not argue that the prison regulations at issue are reasonably related to legitimate penological interests. Qualified immunity is not a defense to plaintiff's claims for prospective injunctive and declaratory relief. Nevertheless, I conclude that no reasonable person could find that denying plaintiff access to a sweat lodge violates the First Amendment. Plaintiff is an inmate in the most restrictive status at Wisconsin's highest security prison. Other courts have held persuasively that legitimate security concerns justify prohibiting Native American inmates in segregated confinement from having access to a sweat lodge. *See Allen v. Toombs*, 827 F.2d 563, 566–67 (9th Cir.1987) (upholding policy excluding inmates in disciplinary segregation unit from participating in sweat lodge ceremony); *McElhaney v. Elo*, No. 98–1832, 2000 WL 32036, at *4 (6th Cir. Jan. 6, 2000) (unpublished opinion) (prison "has legitimate interests at stake in safety and the allocation of limited staff persons by prohibiting higher-security inmates from participating in sweat lodge ceremonies"); *Tart v. Young*, 168 F.Supp.2d 590, 594 (W.D.Va.2001) (denying prisoner access to a sweat lodge does not offend free exercise principles). Because no reasonable jury could find that defendants' refusal to allow plaintiff access to a sweat lodge violates his First Amendment right to freely exercise his religion, I will grant defendants' summary judgment motion as to that claim.

■ That leaves plaintiff's claims that defendants have denied him access to a medicine bag, ceremonial drums, feathers and a smoking pipe in violation of the First Amendment. (In his summary judgment brief, plaintiff mentions other items or ceremonies to which defendants have allegedly denied him access, but because plaintiff failed to raise these issues in his complaint I will not consider them). Because the parties have offered no evidence or argument regarding the validity of these restrictions under the standard set forth in *O'Lone,* 482 U.S. at 349, 107 S.Ct. 2400, I have no way of determining whether these restrictions are reasonably related to legitimate penological interests. Accordingly, I will deny defendants' summary judgment motion as to plaintiff's request for injunctive and declaratory relief on these claims. Defendants may have legitimate reasons for denying plaintiff access to a medicine bag, drums, feathers and a smoking pipe, but because they have not attempted to describe their reasons, these claims will be decided by a jury.

3. *Monetary damages*

With respect to plaintiff's request for money damages, defendants argue that they are entitled to qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). It "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). The doctrine " 'gives public officials the benefit of legal doubts.'" *Id.* at 951 (citation omitted).

■ Qualified immunity will shield defendants "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* —— U.S. ——, ——, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Id.* at 2513 (citing *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). Plaintiff alleges that defendants deprived him of items essential to the practice of his religion for reasons unrelated to any legitimate penological interest. Until that allegation is put into dispute, it is sufficient to demonstrate the violation of a constitutional right.

■ When a constitutional violation is "made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the [constitutional] right was clearly established," an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. "If the law did not put the officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202, 121 S.Ct. 2151. This is because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Because the qualified immunity inquiry is context specific, plaintiff's argument that he need only show that the "free exercise of religion has long ago been established in the prison" environment is simply incorrect. Plaintiff has cited no precedent establishing that

Native American inmates held in high-security status are entitled by the First Amendment to possess a medicine bag, ceremonial drums, feathers or a smoking pipe. Accordingly, I conclude that defendants are shielded from plaintiff's claims for money damages by the doctrine of qualified immunity.

### C. *Equal Protection Claim*

█ In granting plaintiff leave to proceed on his equal protection claim, I noted that he had failed to specify in his complaint how defendants treated him differently from other inmates. Nevertheless, reading plaintiff's complaint liberally, I assumed that he was alleging that defendants restricted the practice of his religion but did not similarly restrict prisoners who hold other religious beliefs. (Plaintiff does not contend that he is treated differently from other Native American Supermax inmates). The equal protection clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, not "every religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Moreover, to show an equal protection violation, a plaintiff must demonstrate intentional or purposeful discrimination. *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982). In other words, plaintiff must show that defendants "singled out a particular group for disparate treatment and selected [their] course of action at least in part for the purpose of causing its adverse effects on" Native Americans. *Id.* Plaintiff has set forth no facts from which a jury could conclude that defendants singled out inmates who practice the Native American religion for particularly adverse treatment in comparison to Supermax inmates who practice other religions. Although plaintiff has submitted an affidavit in which he alleges that "[a]ll other religions at SMCI are allowed to practice the 'requirements' or 'rites' to meet their religious needs" and that "all inmates at SMCI, except Native Americans, are allowed to practice their religious tenets," he does not explain how he acquired the personal knowledge necessary to make such sweeping assertions in a sworn affidavit. Memorializing mere speculation in the form of an affidavit does not convert the speculation into competent evidence. Accordingly, I will grant defendants' motion for summary judgment on plaintiff's equal protection claim.

One final issue must be addressed. Plaintiff's complaint has survived defendants' summary judgment motion only on plaintiff's claims that he was denied access to a medicine bag, drums, feathers and a smoking pipe in violation of the First Amendment. The allegations in plaintiff's complaint with respect to these claims directly implicate only defendant Litscher, who is Secretary of the Department of Corrections, and defendants Berge and Overbo, who are the warden and the chaplain, respectively, at the Supermax prison. Moreover, because I have concluded that defendants are immune from money damages, if plaintiff is successful at trial he is entitled to injunctive and declaratory relief only. By virtue of their positions within the Department of Corrections and the Supermax prison, defendants Litscher, Berge and Overbo are well situated to provide any injunctive relief to which plaintiff may be found entitled. Accordingly, defendants Hompe, Huibregtse, Ray and O'Donnell will be dismissed from this case.

### ORDER

IT IS ORDERED that

1. Defendants' motion for summary judgement is GRANTED as to plaintiff

Dennis W. Gonzalez's claim that his First Amendment free exercise rights were violated when a religious text was removed from his cell;

2. Defendant's motion for summary judgment is GRANTED as to plaintiff's claim that defendants are violating his First Amendment free exercise rights by denying him access to a sweat lodge;

3. Defendant's motion for summary judgment is GRANTED as to plaintiff's Fourteenth Amendment equal protection claim;

4. Defendants' motion for summary judgment is DENIED as to plaintiff's claims that he was denied access to a medicine bag, ceremonial drums, feathers and a smoking pipe in violation of the First Amendment's free exercise clause. However, defendants are qualifiedly immune to plaintiff's demand for money damages on these claims.

5. Defendants Bradley T. Hompe, Peter A. Huibregtse, John Ray and Cindy O'Donnell are DISMISSED from this case.