Berrell FREEMAN, Plaintiff,

v.

Gerald BERGE and Jon E.
Litscher, Defendants.

No. 03–C–0021–C.

United States District Court,
W.D. Wisconsin.

June 3, 2003.

─────────

Berrell Freeman, Boscobel, WI, Pro se.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for defendants.

## OPINION AND ORDER

CRABB, District Judge.

In an order dated February 12, 2003, I allowed plaintiff Berrell Freeman to proceed *in forma pauperis* on claims that defendants Gerald Berge and Jon Litscher violated his rights (1) to be free from unreasonable searches under the Fourth Amendment and from excessive force under the Eighth Amendment; (2) to receive adequate food under the Eighth Amendment; (3) to be free from extreme cell temperatures under the Eighth Amendment; and (4) to receive social interaction and sensory stimulation under the Eighth Amendment. Defendants have filed a motion to dismiss most of these claims on multiple grounds. First, defendants contend that plaintiff has failed to exhaust his administrative remedies for each of his claims except for his claim regarding extreme cell temperatures. Second, they argue that plaintiff's claim that he was denied food in violation of the Eighth Amendment is barred by the settlement agreement in *Jones 'El v. Berge*, No. 00–C–421–C. Third, they argue that they are entitled to qualified immunity on plaintiff's claims that he was denied social interaction and sensory stimulation.

Defendants' motion will be granted in part and denied in part. I agree with defendants that plaintiff failed to exhaust his administrative remedies with respect to his claim that defendants subjected him to unconstitutional strip searches. Also, I agree that defendants are entitled to qualified immunity on plaintiff's claims that defendants deprived him of social interaction and sensory stimulation in violation of the Eighth Amendment. Accordingly, I will dismiss these claims. However, I conclude that plaintiff has administratively exhausted his claim that defendants denied him adequate food and that this claim is not barred by the *Jones 'El* settlement agreement.

Also before the court is plaintiff's second motion for appointment of counsel. Because I am not persuaded that appointed counsel is appropriate in this case, plaintiff's motion will be denied.

For the purpose of deciding this motion to dismiss, I accept as true the allegations in plaintiff's complaint. In addition, I have considered documentation of plaintiff's use of the inmate complaint review system. Because these are public records, a court may take judicial notice of the documents without converting the motion to dismiss into a motion for summary judgment. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 455 (7th Cir. 1998).

## FACTS

In inmate complaint number WSPF–2002–41916, dated December 2, 2002, plaintiff wrote: "Due to the Settlement Agreement food is not to be used as punishment. I have been denied food because I did not have my light on, etc. This is using food as punishment. I HAVE NEVER REFUSED MY MEALS." The inmate complaint examiner recommended that the complaint be dismissed, writing that the policies regarding meal delivery were reasonable. The reviewer, the corrections complaint examiner and the office of the secretary affirmed the dismissal.

In complaint number WSPF–2002–41987, also dated December 2, 2002, plaintiff wrote that the "lack of access to the outdoors deprives me of my basic human need for sensory stimulation." The inmate complaint examiner recommended that the complaint be dismissed, concluding that "complainant has provided no evidence

whatsoever that he resides in an environment harmful to his well-being." The decision was affirmed by the reviewer, the corrections complaint examiner and the office of the secretary.

Plaintiff filed inmate complaint number WSPF–2002–41219 on November 25, 2002, in which he wrote that he has been "subjected to 24 hour monitoring by video/audio denying me meaningful human contact." The inmate complaint examiner rejected the complaint, stating, "The issues in this complaint have been addressed in WSPF–2002–41987." This decision was affirmed by the corrections complaint examiner and the office of the secretary.

On December 9, 2002, plaintiff filed inmate complaint number WSPF–2002–42678. He wrote: "Due to the 24 hour lighting I have suffered from decreased vision/associated medical problems." The inmate complaint examiner noted that there was "nothing noted regarding decreased vision from the lighting at WSPF in plaintiff's last eye doctor report from January 28, 2002." The examiner recommendation that the complaint be dismissed, a decision that was affirmed by the reviewer, the corrections complaint examiner and the office of the secretary.

In complaint number WSPF–2002–17961, plaintiff wrote that he was subject to monthly cell and strip searches. The inmate complaint examiner recommended that the complaint be dismissed and plaintiff did not appeal that decision.

## OPINION

### I. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■ The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prohibits the bringing of any action "with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s exhaustion requirement is mandatory and applies to all prisoners seeking redress for wrongs occurring in prison. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Court of Appeals for the Seventh Circuit has held that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Massey v. Helman*, 196 F.3d 727 (7th Cir.1999). The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures. *Massey*, 196 F.3d at 733.

"Before an inmate may commence a civil action ... the inmate shall exhaust all administrative remedies that the department of corrections has promulgated by rule." Wis. Admin. Code § DOC 310.05 (November 2002). (Plaintiff filed at least one of the inmate complaints at issue in this case before the November amendments to Chapter DOC 310 became effective On December 1, 2002. However, the differences between the two versions are not relevant to deciding this case.) Generally, to administratively exhaust a claim, an inmate must file a complaint with an inmate complaint examiner, receive a decision on the merits and appeal an adverse decision to the "appropriate reviewing authority," the corrections complaint examiner and the office of the secretary. Wis. Admin. Code § DOC 310.07. (In limited instances not at issue in this case, the

filing and appeal process is altered somewhat.)

An inmate shall include only one issue in each complaint and file no more than two complaints each week. Wis. Admin. Code §§ DOC 310.09(1)(e) and (2). The inmate complaint examiner may reject a complaint if it fails to allege sufficient facts upon which redress may be made, does not raise a "significant issue," is untimely or raises an issue already addressed in another complaint, among other reasons. Wis. Admin. Code § DOC 310.11(4).

■ To exhaust administrative remedies, a prisoner must observe the procedural requirements of the system. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred"). Any other approach would defeat the statutory objective of allowing the prison administration the opportunity to fix the problem, *id.* at 1024, and would remove the incentive that § 1997e provides for inmates to follow state procedure, *id.* at 1025.

■ The first issue concerns plaintiff's claim that he was denied sensory stimulation and social interaction. The factual allegations underlying this claim are that he lacked access to the outdoors, and was subject to 24-hour lighting and audio and video monitoring. Defendants contend that plaintiff failed to exhaust his administrative remedies with respect to this claim because he never challenged the prison's policies regarding lighting, monitoring and the outdoors in *one* complaint. Instead, he filed complaints addressing each of these issues separately.

I disagree with defendants that plaintiff was required to put all of these allegations in one grievance. They are separate occurrences involving separate facts. What joins these allegations is a *legal* theory, recognized in *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), that multiple conditions having "a mutually enforcing effect" on one human need may violate the Eighth Amendment in combination when they would not do so alone. Defendants point to no regulation requiring inmates to put all allegations encompassed by a legal theory in a single complaint. Rather, the regulations instruct inmates to include only "one issue" in each complaint. Wis. Admin. Code. § 310.09(1)(e) (November 2002). Although the term "issue" as used in the regulation has not been construed in the case law, it appears that examiners are interpreting issues to mean *factual* issues and not *legal* issues. *See Horton v. Berge*, No. 02–C–470–C, dkt. # 50 (W.D.Wis. March 12, 2003) (granting defendants' motion to dismiss for failure to exhaust administrative remedies when plaintiff included in his inmate complaint "a variety of grievances relating to sensory deprivation and social isolation" and examiner rejected complaint because it contained more than one issue).

Defendants cannot have it both ways. An inmate must be permitted to either separate or join his allegations regarding isolation and sensory deprivation; defendants cannot make it impossible for inmates to file claims involving the type of claim identified in *Wilson*. *Strong v. David*, 297 F.3d 646, 649 (7th Cir.2002) ("[N]o prison system may establish a requirement inconsistent with the federal policy underlying § 1983."). So long as plaintiff has employed the administrative review system to timely raise all the factual issues encompassed by a particular legal claim, the regulations do not require an inmate to combine all of his grievances into one complaint. (A colorable argument could be made that plaintiff failed to administratively exhaust his claim with re-

spect to the issue of 24–hour lighting because he did not refer expressly to sensory deprivation in his prison grievance. However, defendants did not make this argument, so I will leave its resolution for another day.)

■ The next issue concerns the timing of plaintiff's grievances in relation to the date of the settlement agreement in *Jones 'el v. Berge*, No. 00–C–421–C, to which plaintiff is party and which addresses many of the claims that plaintiff raised in his complaint. Defendants argue that because plaintiff filed many of his grievances after the settlement agreement took effect in March 2002, he is "really" alleging violations of the settlement agreement. Therefore, defendants contend, plaintiff failed to exhaust his administrative remedies on his claims of social isolation and sensory deprivation for the period before the settlement agreement.

I agree with defendants to the extent they are arguing that the settlement agreement limits the relief plaintiff may obtain in this lawsuit for injuries he has sustained as a result of social isolation and sensory deprivation. In the March 12, 2003 order allowing plaintiff leave to proceed, I noted that if plaintiff believed that defendants were violating the settlement agreement, he should direct his concerns to the monitor rather than file a separate lawsuit. However, plaintiff remained free to maintain a lawsuit for money damages for conditions that existed *before* the settlement agreement took effect.

Defendants' argument that plaintiff is barred completely from proceeding on his social isolation and sensory deprivation claims is based on an assumption that because plaintiff filed his grievances after the settlement agreement, he did not intend to challenge conditions as they existed before the settlement agreement. This assumption is not justified. Nothing in plaintiff's prison grievances suggest that he intended them to be time restricted. Thus, plaintiff's grievances should be construed as challenging the conditions as they existed since he was transferred to the Secure Program Facility, which was before March 2002.

It is true that the regulations permit examiners to reject complaints as untimely if they are filed more than 14 days after the event giving rise to a claim. Wis. Admin. Code § DOC 310.11(4)(d). Regardless whether this requirement would apply to ongoing violations, it is undisputed that the examiners did not reject plaintiff's complaint for untimeliness or limit consideration of the question raised to a particular time period. Thus, I conclude that plaintiff has administratively exhausted these claims.

■ Defendants also argue that plaintiff's claim that he was denied food in violation of the Eighth Amendment is barred by the settlement agreement because the agreement contains a provision covering the use of food as punishment. However, even assuming that all of plaintiff's claims regarding the deprivation of food arose after March 2002, he is not barred from litigating that issue in this suit. The issue of using food as punishment was not certified for class treatment in *Jones 'El* or otherwise presented to the court. As I explained in *Gonzalez v. Litscher*, 230 F.Supp.2d 950 (W.D.Wis. 2002), as a general rule, unless an issue in a class action is approved for class treatment, the inclusion of that issue in a settlement agreement will not prohibit subsequent lawsuits seeking to litigate constitutional claims involving the same issue. Otherwise, class members could be bound by settlements with respect to issues for which they had no adequate representation and little or no opportunity to be heard.

The plaintiffs in *Jones 'El* did not allege that inmates were being denied food unlawfully and I did not certify the issue for class treatment. Thus, the settlement agreement does not bar plaintiff from litigating this issue in this case, insofar as he is alleging that the denial of food violates the Eighth Amendment and not just the settlement agreement.

■ Finally, I agree with defendants that plaintiff failed to exhaust his administrative remedies with respect to his claim that he was strip searched in violation of the Fourth and Eighth Amendments. Plaintiff did not appeal his inmate complaint regarding strip searches. By failing to appeal the dismissal, plaintiff failed to exhaust his administrative remedies. *Pozo*, 286 F.3d at 1024. Accordingly, I will dismiss plaintiff's claim that he was unlawfully strip searched for failure to exhaust his administrative remedies.

## II. QUALIFIED IMMUNITY

■ Defendants argue that they are entitled to qualified immunity on plaintiff's claims that he was denied social interaction and sensory stimulation. Qualified immunity provides officers with protection from lawsuits for money damages when there is no clearly established law that the official's act violated the Constitution. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A plaintiff cannot show that the law is clearly established by pointing to an "abstract right." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). However, it is not necessary to show that there is an identical case or one with "materially similar" facts. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Rather, a right is "clearly established" when a reasonable official would know that what he or she is doing violates that right. *Id.*

The legal theory under which I allowed plaintiff to proceed was first recognized by the Supreme Court in *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), in which the court stated that conditions "alone, or in combination, may deprive inmates of the minimal civilized measure of life's necessities." This statement was further refined in *Wilson v. Seiter:* "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." The Court identified expressly only "food, warmth [and] exercise" as human needs. *See also Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (stating that life's necessities include food, clothing, shelter and medical care).

In *Jones 'El*, I concluded that basic human needs include social interaction and sensory stimulation. Although the Court of Appeals for the Seventh Circuit has recently confirmed the view that the Eighth Amendment prohibits wanton infliction of psychological as well as physical pain, *Calhoun v. DeTella*, 319 F.3d 936 (7th Cir.2003), it has not expressly held that social isolation and sensory deprivation may serve as bases for a claim under the Eighth Amendment. Rather, in *Bono v. Saxbe*, 620 F.2d 609, 614 (7th Cir.1980), the court held: "Inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment even if they continue for an indefinite period of time." *But see Hoptowit v. Ray*, 682 F.2d 1237, 1257–58 (9th Cir.1982) ("The deprivation of nearly all fresh air and light, particularly when coupled with the guard's control over the window and the electric light, creates an extreme hazard to the physical and mental

well-being of the prisoner in violation of the Eighth Amendment."); *Ruiz v. Johnson*, 37 F.Supp.2d 855, 915 (S.D.Tex.1999) (finding that prison officials violated Eighth Amendment when they subjected inmates to "extreme social isolation and reduced environmental stimulation"); *Madrid v. Gomez*, 889 F.Supp. 1146, 1264 (N.D.Cal.1995) (placement of mentally ill inmates in segregation is cruel and unusual punishment).

■ I noted in *Jones 'El* that *Bono* does not stand for the proposition that claims of social isolation and sensory deprivation can never amount to violations of the Eighth Amendment. I adhere to the view that harm caused by lack of human contact and sensory stimulation may violate "contemporary standards of decency" in some instances. However, with *Bono* as the only case as a guide in this circuit, it would not be unreasonable for a prison official to believe that constant cell illumination, audio and visual monitoring and lack of access to the outdoors did not violate the Eighth Amendment, alone or in combination. Although the determination whether a law is clearly established is not limited to a review of cases in this circuit, I cannot say that there was such a "clear trend" in the case law from other courts that it was "merely a question of time" that the right would be recognized by the Court of Appeals for the Seventh Circuit. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir.2000). Few courts have addressed the issue directly and those that have are not in agreement regarding what the Eighth Amendment requires. *Compare Ruiz*, 37 F.Supp.2d 855 *and Madrid*, 889 F.Supp. 1146, *with Newman v. State of Alabama*, 559 F.2d 283, 291 (5th Cir.1977) (rejecting argument that deterioration of mental health implicates Eighth Amendment concerns); *Everson v. Nelson*, 941 F.Supp. 1048, 1051 (D.Kan.1996) (holding that "retrogression of human development" does not state claim under Eighth Amendment); *see also* Gertrude Strassburger, *Judicial Inaction and Cruel and Unusual Punishment*, 11 Temp. Pol. & Civ. Rts. L.Rev. 199 (2001) ("[N]o state or federal court has ever held that isolation for prolonged periods of time is a constitutional violation per se.")

Since the court of appeals decided *Bono*, evidence has accumulated regarding the harm that depriving inmates of social interaction and sensory stimulation can cause. *See* Leena Kurki & Norval Morris, *Purposes, Practices and Problems of Supermax Prisons*, 28 Crime & Just. 385 (2001) (evaluating studies and concluding that solitary confinement will have detrimental psychological effects unless it lasts only a short time); Maria Dorte Sestoft, et al., *Impact of Solitary Confinement on Hospitalization among Danish Prisoners in Custody*, 21 Int'l J.L. & Psychiatry 99 (1998) (finding that rate of hospitalization of prisoners in solitary confinement for more than four weeks was 20 times higher than prisoners in the general population); Craig Haney & Mona Lynch, *Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement*, 23 N.Y.U. Rev. L. & Soc. Change 477, 481 (1997) ("[C]onstitutional doctrines currently governing solitary confinement fail to recognize the nature and magnitude of the psychological trauma that can be inflicted by this form of punishment."); Stuart Grassian, *Psychopathological Effects of Solitary Confinement*, 140 Am. J. Psychiatry 1450 (1983) (finding that many inmates in solitary confinement for long periods of time became hypersensitive to external stimuli, suffered from hallucinations, perceptual distortions, paranoia and acute anxiety attacks, had difficulty with memory and concentration and engaged in self-mutilation). However, agreement among mental health profes-

sionals regarding the deleterious effects of solitary confinement does not translate into legal notice that defendants may have been violating the Eighth Amendment. In the absence of case law concluding that conditions similar to those alleged by plaintiff are unconstitutional, I must conclude that defendants are entitled to qualified immunity on plaintiff's claims that he was subjected to sensory deprivation and social isolation.

Qualified immunity does not apply to claims for injunctive relief. However, plaintiff cannot obtain injunctive relief on these claims because such relief is preempted by the settlement agreement. Accordingly, these claims must be dismissed.

Two of plaintiff's claims remain: (1) his claim that defendants denied him food in violation of the Eighth Amendment; and (2) his claim that defendants subjected him to extreme cell temperatures in violation of the Eighth Amendment. Defendants do not argue that they are entitled to qualified immunity on these claims, so I do not address that issue. All other claims are dismissed.

## III. MOTION FOR APPOINTMENT OF COUNSEL

■ Plaintiff argues that the court should appoint counsel for him because he suffers from a mental illness and the case is too complex for him to prosecute on his own. It appears that plaintiff has complied with the requirements of *Jackson v. County of McLean,* 953 F.2d 1070 (7th Cir.1992), by first attempting to obtain representation on his own from at least three lawyers. However, before I may appoint counsel for plaintiff, I must conclude that plaintiff is unable to represent him or herself given the complexity and the presence of counsel would make a difference in the outcome of his lawsuit. *Zarnes v. Rhodes,* 64 F.3d 285 (7th Cir.

1995) (citing *Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993)).

I am not persuaded that plaintiff is unable to represent himself. Although plaintiff contends that he is mentally ill, there is no indication that he is incapable of prosecuting this case. Rather, plaintiff's numerous submissions to the court in both this lawsuit and others belie his assertion that counsel is necessary. Further, plaintiff's most complicated claims were those in which he contended that defendants deprived him of sensory stimulation and social interaction. Plaintiff's two remaining claims are not unduly complex. With respect to his food deprivation claim, plaintiff will have to present evidence that he was denied food for so long that his health was threatened. *See Reed v. McBride,* 178 F.3d 849, 853 (7th Cir.1999); *LeMaire v. Maass,* 12 F.3d 1444 (9th Cir.19–93). Similarly, to prove his claim that the temperatures in his cell violated the Eighth Amendment, he will have to present evidence that the temperatures were so extreme that there was a substantial risk of serious harm to his health or safety. *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997); *Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1087 (7th Cir. 1986). It is true that plaintiff may need to obtain expert testimony to prove one or both of these claims. Plaintiff argues that he is indigent and will be unable to pay for an expert. Unfortunately for plaintiff, the desire to shift the costs of litigation to a third party is not an appropriate consideration in determining whether to appoint counsel. If plaintiff is unable to persuade any lawyers she wrote to take his case on a contingency basis, this may be because they have determined that the case is not likely to succeed or will not result in a damage award large enough to recoup the expense of prosecuting the case. It is inappropriate for a court to ask a lawyer to

take the case without regard for his or her assessment of the risks of incurring the expense of the lawsuit against the probability of succeeding on the merits of the case. If plaintiff is to be represented by counsel, he will have to find counsel on his own. If he wishes, he may contact the Wisconsin State Bar Lawyer Referral and Information Service at P.O. Box 7158, Madison, Wisconsin, 53707, 1–800–362–8096, to obtain the names and phone numbers or addresses of lawyers whose practices include Eighth Amendment cases.

### ORDER

IT IS ORDERED that

1. The motion to dismiss filed by defendants Gerald Berge and Jon Litscher is DENIED with respect to plaintiff Berrell Freeman's claim that he was denied food in violation of the Eighth Amendment.

2. Defendants' motion is GRANTED with respect to plaintiff's claims that he was strip searched in violation of the Fourth and Eighth Amendments and that he was subjected to sensory deprivation and social isolation in violation of the Eighth Amendment. These claims are DISMISSED from this action.

3. Plaintiff's second motion for appointment of counsel is DENIED.